**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
IN THE MATTER OF THE
APPLICATION FOR AN ORDER
SEEKING DISCOVERY UNDER 28 U.S.C.
§ 1782
-----------------------------------------------------------X

**24 Misc. 152 (GHW) (GS)**

**REPORT &**
**RECOMMENDATION**

**GARY STEIN, United States Magistrate Judge:**

Before the Court is applicant Carlos Lazo Reyes's ("Lazo") *ex parte*

application for judicial assistance, pursuant to 28 U.S.C. § 1782, seeking to serve

document subpoenas on The Federal Reserve Bank of New York (the "NY Federal

Reserve") and The Clearing House Payments Company LLC ("CHIPS") in the

United States.  (Dkt. No. 5 ("Application" or "App.")).  For the reasons set forth

below, the Court recommends that Lazo's Application be **DENIED** without

prejudice to renewal.

## BACKGROUND

### A.    The Mexican Criminal Investigations

The following facts are taken from the Declaration of Carlos Lazo Reyes

submitted in support of the Application.  (Dkt. No. 7 ("Lazo Decl.")).

Lazo is the founder and former president of YOX Holding S.A. de C.V.

("YOX"), a sports betting company based in Guadalajara, Mexico.  (Lazo Decl. ¶¶ 1,

3, 9).  By 2021, YOX had developed an extensive business and had a large team in

place, including its general manager, Karina Mendoza Antuna ("Mendoza").

(*Id.* ¶ 9).  Around this time, Lazo significantly reduced his involvement in YOX's

operations and focused his attention on other business ventures.  (*Id.*).  In or around

June 2023, Lazo "stepped away" from all his companies to address health issues—in particular, seeking and obtaining cancer treatment in the United States. (Lazo Decl. ¶ 11).  Lazo claims that he ceded all of YOX's operations to Mendoza, his longtime and trusted general manager.  (*Id.*).

In late 2023, with Mendoza at the helm, YOX began receiving complaints from customers who were not receiving payouts following successful wagers. (*Id.* ¶¶ 6, 12, 18).  Lazo claims he investigated these complaints and discovered that Mendoza and "other YOX corporate personnel," including Sara Cristina Ejea Mejia ("Ejea"), Ivan Israel Guerrero Lara ("Guerrero"), Cecilia Paulina Flores Salinas ("Flores"), and Estefania Nares Rivas ("Nares") (together with Mendoza, the "YOX executives"), were engaged in an embezzlement scheme behind his back. (*Id.* ¶¶ 13-14).  Lazo issued a press release asserting that "YOX's operations had been compromised" and filed a criminal complaint seeking an investigation of the YOX executives.  (*Id.*).

The press release triggered the filing of "many" criminal complaints against Lazo himself and YOX in the State of Jalisco, Mexico (where YOX is based) and elsewhere.  (*Id.* ¶¶ 3, 15).  Based on a complaint filed by YOX customer Francisco Villanueva Martinez, a state judge in Jalisco issued a warrant for Lazo's arrest on January 22, 2024.  (*Id.* ¶¶ 16-20).  According to Lazo, the Jalisco arrest warrant "contains no allegation[s] that I participated in any wrongdoing or that I knew or may have known of actions by corrupt corporate insiders," but instead accuses Lazo of fraud "based solely on my prior role as YOX's president."  (*Id.* ¶¶ 21-22).

Relying on media reports, Lazo further claims, "[i]t appears [that] other Mexican [s]tates have issued, or are prepared to issue, similar arrest warrants against" him based on other customer complaints. (*Id.* ¶¶ 23-24). For example, according to media reports, the State of Chihuahua has issued an arrest warrant against Lazo and has also obtained a "Red Notice" from INTERPOL against him.[1] (*Id.* ¶¶ 25, 34). In addition, in connection with the investigation in Jalisco, Lazo claims the Jalisco authorities have "confiscated every single asset belonging to me, my family, and our companies." (*Id.* ¶ 26).

Lazo maintains his innocence, claiming he had no knowledge of any embezzlement at YOX and that "any missing funds have been misappropriated by Mendoza or her co-conspirators—not me." (*Id.* ¶¶ 27, 31-32).

## B.    The Instant Application

Lazo initiated this case on March 29, 2024.[2] (Dkt. No. 2). Through his Application, Lazo seeks to serve subpoenas for documents on the NY Federal Reserve and CHIPS to procure exculpatory evidence for use in the various criminal investigations against him in Mexico, as well as in support of an application he has

---

[1] INTERPOL, which stands for "International Criminal Police Organization," is an inter-governmental organization with 196 member countries that assists law enforcement. *See* "What is INTERPOL," INTERPOL, available at www.interpol.int/en/Who-we-are/What-is-INTERPOL (last visited May 14. 2024).

[2] Lazo initially sought to file the instant Application under seal, which the Honorable Sidney H. Stein provisionally granted while sitting in Part I, and subject to further review by the Judge eventually assigned in the future. (*See* Dkt. Nos. 5, 8). Following assignment of this case to the Honorable Gregory H. Woods, Judge Woods denied Lazo's motion to file the Application under seal and ordered all documents filed theretofore to be viewable on the docket. (*See* Dkt. No. 4). However, Judge Woods noted that he would be open to a re-filing of the Application with certain redactions where necessary. (*Id.* at 3). Thereafter, Lazo wrote to the Court indicating that he would not seek to refile any redacted materials and would proceed with his Application being public. (Dkt. No. 12).

filed with INTERPOL to cancel any Red Notice against him.  (Lazo Decl. ¶¶ 28, 30-31, 35-38).  He also hopes to find incriminating evidence against the YOX executives that he can use to bolster his criminal complaint against them. (*Id.* ¶¶ 32-33).  Lazo claims the discovery he seeks will reveal that he took no part in misappropriating funds from YOX and that the YOX executives are the guilty parties.  (*Id.* ¶¶ 29, 31-32).

The sought-after discovery is directed at documents concerning or reflecting any transfers of funds, including wire transfers, SWIFT messages, book transfers or other forms of transferring cash, funds, or securities, by, to, or for the benefit of YOX; YOX's parent corporation; Lazo, his wife, and his daughter; or any of the five YOX executives—Mendoza, Ejea, Guerrero, Flores, and Nares—from January 2021 to the present.  (*See* Dkt. No. 13 Appx. 1 at 5-6).  Lazo seeks this relief in the form of an order authorizing him to issue subpoenas to the NY Federal Reserve and CHIPS containing these document requests (the "Proposed Subpoenas").  (*See* App. at 12; Dkt. No. 13).  Lazo also seeks compliance with the Proposed Subpoenas within 20 days of service of the order, and for his counsel to be appointed as an examiner. (Dkt. No. 13 Ex. 1 at 2).

## LEGAL STANDARDS

Under 28 U.S.C. § 1782(a),

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person

> and may direct that the testimony or statement be given, or the
> document or other thing be produced, before a person appointed
> by the court.

As a threshold matter, a district court may not grant an application pursuant to Section 1782 unless three statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Kiobel v. Cravath, Swaine & Moore, LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up); *accord, e.g.*, *Fed. Republic of Nigeria v. VR Advisory Servs.*, 27 F.4th 136, 148 (2d Cir. 2022); *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015).

If the requisite statutory requirements are met, district courts will then exercise their discretion to determine whether the sought-after discovery should be permitted. *In re Ulmans*, No. 23 Misc. 23 (GHW) (VF), 2023 WL 3853703, at *3 (S.D.N.Y. Apr. 20, 2023), *adopted* 2023 WL 3412769 (S.D.N.Y. May 12, 2023) (citations omitted). In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court identified four factors for district courts to consider in conducting this analysis. These factors, known as the *Intel* factors, are: "(1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering

restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests." *Ulmans*, 2023 WL 3853703, at *3 (citing *Intel*, 542 U.S. at 264-65).

Although district courts should consider the *Intel* factors as a "useful guide," courts in this Circuit have clarified that they are neither exhaustive nor dispositive. *In re Cbre Global Investors (NL) B.V.*, No. 20 Misc. 315 (VEC), 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021) ("no single *Intel* factor is alone dispositive" and "the *Intel* factors are not to be applied mechanically . . . [a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute") (cleaned up). District courts should also exercise their discretion in light of Section 1782's "twin aims," which are: (1) "providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel*, 542 U.S. at 252.

Finally, "it is neither uncommon nor improper for district courts to grant applications made pursuant to §1782 *ex parte*." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (citing examples); *see also In re Tethyan Copper Co. Pty Ltd.*, No. 21 Misc. 377 (AT), 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) ("Courts routinely grant such petitions *ex parte*.") (citing *Gushlak*, 486 F. App'x at 217). This procedure does not violate the due process rights of the subpoenaed party because that party "'can later challenge any discovery request by moving to quash pursuant

to Federal Rule of Civil Procedure 45(c)(3).'" *In re Abraaj Inv. Mgmt. Ltd.*, No. 20 Misc. 229, 2023 WL 2674752, at *2 (S.D.N.Y. Mar. 29, 2023) (quoting *Gushlak*, 486 F. App'x at 217).

## DISCUSSION

**A.    The Statutory Requirements**

**1.    "Found within the District" and "Interested Person"**

Lazo has satisfied the first statutory requirement under Section 1782.  The Application avers that both the NY Federal Reserve and CHIPS maintain offices at specified addresses within Manhattan (App. at 2), and courts in this District have concluded that both entities are found or reside in this District for Section 1782 purposes.  *See In re Ibiuna Crédito Gestão de Recursos Ltda.*, No. 24 Misc. 13 (JGK) (RFT), 2024 WL 1077559, at *4 n.4 (S.D.N.Y. Feb. 14, 2024), *adopted* 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024); *Ex parte Abdalla*, No. 20 Misc. 727 (PKC), 2021 WL 168469, at *3 (S.D.N.Y. Jan. 19, 2021).  Thus, the Court is satisfied that both the NY Federal Reserve and CHIPS are found in this District.

The Court is similarly satisfied that Lazo is an "interested person" within the meaning of the third statutory requirement.  According to his affidavit, he is both a complainant in a criminal investigation against the YOX executives as well as a target of various criminal complaints and investigations in which arrest warrants have already issued or may issue.  (Lazo Decl. ¶¶ 14, 16-25)  Further, Lazo claims he will be able to provide any exculpatory information he receives from the NY Federal Reserve and CHIPS to the Mexican authorities (as well as INTERPOL) in

connection with the criminal investigations against him, and will also be able to provide any incriminating information about the YOX executives in connection with the criminal complaint he filed against them. (*Id.* ¶¶ 28, 30-33). Taken together, these representations are enough to meet the "interested person" requirement. *See In re Furstenberg Finance SAS*, 785 F. App'x 882, 885 (2d Cir. Aug. 30, 2019) (summary order) (affirming district court decision that applicants were "interested persons" based on evidence that they would be parties to a foreign criminal proceeding and would "submit the relevant evidence directly" in that proceeding); *In re Berlamont*, No. 14 Misc. 190 (JSR), 2014 WL 3893953, at *1 (S.D.N.Y. Aug. 4, 2014) (finding complaining witness in a Swiss criminal investigation was an interested party), *aff'd* 773 F.3d 456 (2d Cir. 2014).

### 2.    "For Use" in a Proceeding in a Tribunal

Whether Lazo has met the second statutory requirement—that the discovery be "for use" in a proceeding in a foreign or international tribunal—warrants further discussion.

Lazo appears to contend that ongoing criminal investigations are tantamount to "proceedings" within the meaning of Section 1782. (App. at 10 ("the discovery sought is *for use* in appropriate foreign and international proceedings, namely, criminal investigations in several Mexican states") (emphasis in original)). But this contention is plainly incorrect. While Section 1782's "for use" prong explicitly contemplates that the "proceeding" in question may be a "criminal investigation[]," the statutory text just as explicitly requires that the criminal investigation be one

before "a foreign or international *tribunal*."  28 U.S.C. § 1782(a) (allowing discovery "for use in a proceeding *in a foreign or international tribunal, including criminal investigations* conducted before formal accusation") (emphasis added).

A "tribunal" within the meaning of Section 1782 includes, but is not limited to, courts; it also includes, more broadly, "an adjudicatory body that exercises governmental authority."  *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 627-28 (2022).  It does not, however, include a prosecuting office that lacks adjudicative authority.  *See, e.g.*, *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998) (noting that a foreign proceeding must be "adjudicative in nature" and that the Second Circuit previously held in *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1020-21 (2d Cir. 1967), that a tax assessment proceeding "was not a proceeding before a 'tribunal' because the role of the government in the administrative proceeding was more akin to a prosecutorial decision to bring a case than to that of a neutral arbitrator, and therefore the proceeding was not adjudicative"); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994) ("the Tokyo District Prosecutor's Office is not a 'tribunal'"); *CFE Int'l LLC v. Denham Cap. Mgmt. LP*, Case No. 22-mc-91355-FDS, 2023 WL 2988745, at *7 (D. Mass. Mar. 6, 2023) (rejecting contention that "a prosecutor that lacks adjudicatory powers qualifies as a foreign or international tribunal"), *adopted* Dkt. No. 79, *CFE Int'l LLC v. Denham Cap. Mgmt. LP* (D. Mass. Aug. 18, 2023).

In some countries, especially in Europe, criminal investigations are conducted by an investigating magistrate or other quasi-judicial officer. In *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456 (2d Cir. 2014), the Second Circuit held that Section 1782 applies to a foreign criminal investigation conducted by a Swiss investigating magistrate seeking documents in the United States. *Id*. at 458. This conclusion, the court explained, followed from Congress's amendments to Section 1782 in 1964 and 1996. *Id*. at 460-61. The former amendment replaced the word "court" with "tribunal," while the latter explicitly added coverage for "criminal investigations conducted before formal investigation." *Id*. Indeed, the legislative history to the 1964 amendment makes plain "Congress's intention to allow federal courts to 'have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries.'" *Id*. (quoting S. Rep. No. 88-1580, at 7 (1964), 1964 U.S.C.C.A.N. 3782, 3788). "In expanding the applicability of § 1782 to encompass investigating magistrates, Congress was implicitly recognizing the differing roles of judges and prosecutors in foreign jurisdictions, particularly in Europe," where the "'prosecutor/adjudicator'" (unlike U.S. prosecutors) is trained to be "'more like [a] neutral adjudicator[] than [an] advocate.'" *Id*. 461 n.6 (quoting *S. Union Co. v. United States*, 567 U.S. 343, 386 (2012) (Breyer, J., dissenting)); *see also id*. ("In Europe . . . a criminal proceeding is a judicial inquiry.") (citation omitted).

Nothing in Lazo's Application indicates that criminal investigations in Mexico are conducted by an investigating magistrate or similar neutral adjudicator akin to what happens in the European inquisitorial system.  Moreover, two different district courts last year denied Section 1782 applications seeking discovery in the U.S. for use in criminal investigations in Mexico on the basis that the "for use" requirement had not been satisfied.

Specifically, in *CFE Int'l v. Denham Capital Management*, *supra*, the applicant, which initiated a criminal investigation in Mexico through the filing of a criminal complaint, argued that "it ha[d] met the 'for use in a proceeding in a foreign or international tribunal'" requirement "because Section 1782 explicitly authorizes discovery in 'criminal investigations conducted before formal accusation.'"  2023 WL 2988745, at *7.  The court squarely rejected that argument, distinguishing the situation of the Swiss investigating magistrate involved in the Second Circuit's decision in *In re Application*, *supra*, and noting that "the Mexican criminal investigation is not, and may never be, in a stage where judicial proceedings are even under reasonable contemplation."  *Id.*  The court in *CFE Int'l LLC v. Antaeus Group, LLC*, No. A-23-CV-56-DII-ML, 2023 WL 7218045 (W.D. Tex. Sept. 5, 2023), *adopted* 2023 WL 7181266 (W.D. Tex. Nov. 1, 2023), applied this reasoning in denying a similar request by the same applicant, agreeing with the *Denham Cap. Mgmt.* court that "the statutory requirement that the material must be intended for use in a proceeding before a 'foreign or international tribunal' has not been satisfied."  *Id.* at *5 (cleaned up).

Accordingly, the mere fact that criminal investigations are underway in Mexico does not establish that the requested discovery meets the "for use" prong of Section 1782.  Lazo must also show that the documents would be used in a "proceeding in a foreign or international tribunal."  Notably, his Application does not identify any specific "tribunal" and studiously avoids mentioning the word "tribunal," referring only to "proceedings" and "investigations" (except when quoting the statute).  (*See* App. at 2, 5-8, 10).

This does not end the analysis, however.  The Application does not allege merely that there are criminal investigations underway.  Lazo alleges that a state judge in Jalisco has issued an arrest warrant against him and that other arrest warrants either have, or may be, issued against him in other Mexican states.  (Lazo Decl. ¶¶ 20, 24-25).  He also alleges that the authorities in Jalisco have confiscated his property.  (*Id.* ¶ 26).  These facts could serve to distinguish this case from the *CFE Int'l* cases, where there was "no evidence that . . . either [of the two individuals subject to investigation] would be charged with a crime or that any court proceedings were within contemplation."  *Denham Cap. Mgmt.*, 2023 WL 2988745, at *7.

Importantly, for the "for use" requirement to be satisfied, a proceeding need not be pending before a foreign or international tribunal; it is sufficient if such a proceeding is "within reasonable contemplation."  *Intel*, 542 U.S. at 259.  In interpreting this imprecise standard, the Second Circuit has found that a "1782 applicant must present to the district court some concrete basis from which it can

determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds, Accounts And/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015).

Against this backdrop, the Court now assesses whether any of the investigations identified in the Application satisfy the "for use" requirement, bearing in mind that "[t]he burden of establishing entitlement to discovery pursuant to Section 1782 falls on the applicant." *In re Al-Attabi*, No. 21 Misc. 207 (VSB) (RWL), 2022 WL 229784, at *2 (S.D.N.Y. Jan. 26, 2022); *see also Certain Funds*, 798 F.3d at 120 (affirming denial of *ex parte* application under Section 1782 where applicants "[did] not me[e]t their burden of establishing" that for-use prong was satisfied).

*Jalisco Investigation.* Although Lazo alleges that "a state judge in Jalisco issued an arrest warrant" against him on January 22, 2024 (Lazo Decl. ¶ 20), his Application provides no particulars about this warrant or its legal consequences. Nor does the Application explain what proceeding, if any, has been triggered by the arrest warrant and before what tribunal any such proceeding is (or will be) pending. For instance, Lazo does not say whether he is able to, or intends to, seek any relief from the state judge who issued the warrant. If the arrest warrant simply represents one step in the investigative process and Lazo intends to present evidence only to the prosecutors in Jalisco rather than to any court or tribunal, then, for the reasons discussed above, the "tribunal" element would appear to not be satisfied. *See Denham Cap. Mgmt.*, 2023 WL 2988745, at *4, *7 (barring discovery

even though Mexican prosecutors had asked court to issue an "imputación" against one of the subjects of the criminal complaint and noting that an "imputación" is simply the "first step" prosecutors take to begin a criminal proceeding).

Lazo declares that he has been "advised by counsel" that, as the target of a criminal investigation, he can provide exculpatory evidence at any time.  (Lazo Decl. ¶ 30).  Yet noticeably absent from Lazo's Application is a supporting declaration or affidavit from any Mexican counsel.  In the absence of an explanation from Mexican counsel, the Court lacks a "concrete basis," *Certain Funds*, 798 F.3d at 124, upon which to find that the Jalisco arrest warrant gives rise to, or that the requested discovery is intended for use in, a "proceeding" before a foreign "tribunal."  Such a basis may well exist, but it is not established by Lazo's barebones allegations alone.

There is a second reason why Lazo's averments regarding the Jalisco arrest warrant do not meet the "for use" prong.  According to Lazo, the arrest warrant does not allege that he engaged in any wrongdoing and is instead based solely on his role as YOX's former president.  (*Id*. ¶¶ 21-22).  If that is so, it is hard to discern how the discovery Lazo seeks from the NY Federal Reserve and CHIPS would be of any use to Lazo in defending himself.  The purpose of the requested discovery, according to Lazo, is to show that he did not engage in wrongdoing, *i.e.*, he did not misappropriate any funds.  (*Id*. ¶¶ 29, 32).  The requested discovery has no apparent bearing on Lazo's role at YOX.  For this reason as well, Lazo has not met his burden on the "for use" factor with respect to the Jalisco arrest warrant.  *See Mees*, 793 F.3d at 298 (the "plain meaning of the phrase 'for use in a proceeding'

14

indicates something that will be employed with some advantage or serve some use in the proceeding").

*Jalisco Confiscation of Property*.  Lazo's allegations that "the Jalisco authorities" confiscated his, his family's, and their companies' assets (*id*. ¶ 26) are, if anything, even more threadbare.  The Application makes no showing that a court was involved in ordering the confiscation of these assets, that any proceeding relating to the confiscation is now pending before any court or other tribunal, or that such a proceeding is at least within reasonable contemplation.  Here again, Lazo has provided no declaration from Mexican counsel explaining any of this.  Lazo thus has failed to meet his burden with respect to the alleged confiscation as well.

*Other Investigations Against Lazo*.  Likewise, Lazo's averments that "it appears other Mexican states" have issued, or are prepared to issue, arrest warrants against him (*id*. ¶¶ 24-25) do not help carry his burden.  Lazo provides no further information about these warrants than he did about the Jalisco warrant and it appears his knowledge about them is based solely on media reports.  The Court cannot find on the present record that there is any proceeding before a foreign tribunal pending, or within reasonable contemplation, in relation to these warrants.

*Lazo's Criminal Complaint*.  Although Lazo states that he filed a criminal complaint "seeking" an investigation against the YOX executives (*id*. ¶ 14), he provides no further information about this complaint.  He does not claim that any arrest warrants have been issued as a result of his complaint or, indeed, that prosecutors have taken any action on it at all.  And even if prosecutors have

commenced an investigation against the YOX executives, that is insufficient to show the requisite proceeding before a foreign tribunal, as discussed above.

*INTERPOL Red Notice*.  Finally, Lazo's filing of "an application with INTERPOL seeking the cancellation of any Red Notice" (*id*. ¶ 35) falls far short of satisfying the "for use" prong of Section 1782.  Although Lazo makes conclusory allegations that he seeks to use the evidence obtained from his Application "in the INTERPOL proceedings" (*id*. ¶ 38), nowhere does he describe what such "proceedings" consist of, or that he means anything other than that he will be asking INTERPOL itself to revoke the Red Notice.  Lazo provides no evidence and no authority to support the proposition that in considering Lazo's application, INTERPOL would be exercising adjudicatory powers or acting as a "tribunal" within the meaning of Section 1782.

*      *      *

In the foregoing analysis, the Court does not mean to suggest that Lazo *cannot* make a sufficient showing that the discovery sought in the Application is for use in a proceeding before a foreign or international tribunal, as required under Section 1782.  It finds only that Lazo *has not* made a sufficient showing based on the present Application.  He may, if he wishes, submit a revised application that cures the deficiencies described above.

16

**B.    Discretionary Factors**

Even though the Court has concluded above that Lazo's Application fails to satisfy the mandatory statutory factors, it will proceed to analyze the application of the discretionary *Intel* factors to this case.

Under the first *Intel* factor, courts consider whether the target of an applicant's discovery request is a participant in the relevant foreign proceeding. "[W]hen the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, Lazo seeks discovery from the NY Federal Reserve and CHIPS, neither of which are interested parties or are "likely going to be 'a participant in the foreign proceeding[s].'" (App. at 10 (quoting *Fed. Republic of Nig. v. VR Advis. Sers., Ltd.*, 499 F. Supp. 3d 3, 12 (S.D.N.Y. 2020), *vacated and remanded on other grounds by* 27 F.4th 136 (2d Cir. 2022)). Thus, the first *Intel* factor weighs in favor of granting the Application.

The second *Intel* factor instructs district courts to consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "'Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance,'" and courts "should deny discovery on the basis of a lack of receptiveness only where it is

provided with 'authoritative proof that the foreign tribunal would reject evidence obtained with the aid of [S]ection 1782.'" *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100-02 (2d Cir. 1995)).

In the context of this *ex parte* application, there is no indication that Mexican authorities would reject the requested evidence. To the contrary, Lazo claims that he can present exculpatory evidence, gathered pursuant to the Application, to Mexican authorities at any time. (Lazo Decl. ¶ 33). Further, he also cites cases, both in and outside of this District, which have found Mexican courts to be generally receptive to judicial assistance from United States District Courts. (App. at 11 (citing, *inter alia*, *Salcido-Romo v. S. Copper Corp.*, No. 16 Civ. 1639 (PHX) (DLR), 2016 WL 3213212, at *4 (D. Ariz. June 10, 2016), and *In re Operacion Y Supervision De Hoteles*, No. 14 Misc. 82 (PGG), 2015 WL 82007, at *6 (S.D.N.Y. Dec. 31, 2014)). Thus, Lazo has made a sufficient showing that, given the "statute's underlying policy" favoring discovery assistance, the second *Intel* factor weighs towards granting his Application.

The third *Intel* factor seeks to flush out "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This does not require the applicant to have first sought the requested discovery in the foreign tribunal; "'[c]ourts may grant [Section] 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . or where the information sought was not discoverable under the

laws of the foreign country at issue in the foreign proceeding.'" *In re Batbold*, No. 21 Misc. 218 (RA) (OTW), 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021) (quoting *In re BNP Paribas Jersey Trust Corp.*, No. 18 Misc. 47 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018)); *see also Azima v. Handjani*, No. 21 Misc. 501 (PGG), 2022 WL 2788400, at *7 (S.D.N.Y. July 15, 2022) (third *Intel* factor favored granting application where no showing that evidence sought "is within the jurisdictional reach of the [foreign] court, or that [applicant] seeks discovery here in bad faith").

Here, it appears likely that the same information Lazo seeks to compel from the NY Federal Reserve and CHIPS would be available in Mexico. As described in the Application, Lazo seeks records of financial transactions that "passed through the United States" and asserts the NY Federal Reserve and CHIPS maintain records of U.S. dollar denominated transactions that "flow through U.S. correspondent banks of foreign banking institutions." (App. at 8). In other words, the transactions themselves originated at "foreign banking institutions," presumably in Mexico, where YOX and its executives are based. Although, as Lazo notes, the NY Federal Reserve and CHIPS may be outside of Mexico's jurisdiction (*id.*), records of most, if not all, of the transactions would be located at Mexican banks *within* Mexico's jurisdiction. Lazo provides no explanation as to why he has not sought records of the financial transactions from Mexican banks or, for that matter, from YOX itself.

Nonetheless, "'there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents.'" *Abdalla*, 2021 WL 168469, at *5 (quoting *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (emphasis in original)). It may well be that Lazo lacks the means under Mexican law to compel production of the financial records in Mexico at this time. Under these circumstances, the Court cannot conclude that Lazo is attempting to circumvent prohibitions on discovery in Mexico. Without any evidence suggesting Lazo's circumvention of Mexican proof gathering restrictions, the Court finds the third *Intel* factor is at this point neutral with respect to Lazo's Application.

The fourth *Intel* factor considers whether discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Consequently, the applicant's discovery requests should be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Athene Holding Ltd. v. Dang*, No. 23 Misc. 171 (JHR) (SLC), 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023) (citation omitted). The proportionality analysis "depends on the relevance of the information sought—and, in the case of a § 1782 petition,

relevance is assessed with regard to the foreign proceeding." *Id.* (citation omitted). Under the fourth factor, a district court may "limit the scope" of the requested discovery. *In re Tel. Media Grp. Ltd.*, No. 23 Misc. 215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sep. 6, 2023).

Here, the Court has some concerns with the breadth and potential burden of Lazo's Proposed Subpoenas. First, the document requests go back to January 2021, even though Lazo claims that there was no misappropriation of funds until after he left YOX in June 2023. (Lazo Decl. ¶¶ 10-13). Second, the requests seek all transfers to or from YOX and its parent corporation over this time period, regardless of whether Lazo, his family members, or the YOX executives were the other party to the transaction—which could, depending on YOX's business, sweep in a large volume of transactions having nothing to do with the events at issue. Third, the names of some of the individuals identified in the Proposed Subpoenas, such as "Carlos Lazo," may be so common that a search across the NY Federal Reserve's and CHIPS's entire databases will yield many thousands of transactions with no reliable way for the subpoena recipients to determine which transactions relate to the individuals in question.

But in the absence of more concrete information, these concerns do not warrant denying this *ex parte* Application on burden grounds. As in another case involving an *ex parte* application for banking records in the United States, Lazo seeks "specific types of documentary records . . . that are maintained . . . in the ordinary course of business, are computerized and thus searchable, and can be

retrieved via the use of . . . search terms." *Ulmans*, 2023 WL 3853703, at *6.

Should the NY Federal Reserve or CHIPS "conclude that the requests are unduly

burdensome," they "may challenge the subpoena by moving to quash under Federal

Rule of Civil Procedure 45." *Id.*; *see also Gushlak*, 486 F. App'x at 217.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends denying the *ex*

*parte* application for discovery without prejudice to renewal.

DATED:    New York, New York
          May 16, 2024

_____
GARY STEIN
United States Magistrate Judge